USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/14/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDITH SANDRINE DIKAMBI,

                Plaintiff,

                v.

CITY UNIVERSITY OF NEW YORK, DR. CARLTON J. ADAMS,

                Defendants.

No. 19-CV-9937 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Judith Sandrine Dikambi brings this action against Defendants City University of New York ("CUNY") and Dr. Carlton J. Adams, alleging gender discrimination, sexual harassment, and unlawful retaliation in employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*, and state law. Now before the Court are the motions, filed by CUNY and Adams, to dismiss the second amended complaint for failure to state a claim. For the reasons that follow, both motions are granted in part and denied in part.

## BACKGROUND

### I. Factual Background

    The following facts are drawn primarily from the allegations in the second amended complaint ("Complaint"), construed in the light most favorable to Plaintiff as the non-moving party, and with reasonable inferences drawn in her favor. *See, e.g., Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Plaintiff Judith Sandrine Dikambi is "an adult black female of African national origin" and a resident of New York. Compl. ¶ 1. Defendant City University of New York is the public university system of New York City. Id. ¶ 2. Defendant Dr. Carlton J. Adams "is an African-American male" who at the time of the following events was a professor of Africana Studies at John Jay College of Criminal Justice ("John Jay"), which is "within the CUNY system." Id. ¶¶ 3-4.

In 2005, Plaintiff began her employment with John Jay as a "coordinator for Undergraduate Programs and Initiatives." Id. ¶ 10. As of 2013, Plaintiff had been "promoted to the position of Manager, International Student and Scholar Services in the Office of International Studies and Programs at John Jay." Id. ¶ 11.

In 2014, Plaintiff sought Adams's "assistance with the completion of a paper for her Master's thesis," as part of a graduate program in Public Administration at John Jay. Id. ¶ 12. According to Plaintiff, "[d]uring one thesis writing session at his home in 2014, [] Adams subjected [her] to unwanted oral sexual contact." Id. ¶ 14. Plaintiff alleges that throughout "her professional relationship" with Adams, which spanned "from 2006 through 2014," she "endured additional incessant unwanted sexual advances by him, including invitations to have sexual relations with him; asking her 'How much will it take for me to sleep with you?'; and placing his hands on her breasts and buttocks." Id. ¶ 15.

In January 2017, Plaintiff was transferred to the Africana Studies Department under the direct supervision of Adams, who was then chair. Id. ¶ 17. "Almost immediately, [she] was exposed by Adams to a barrage of unrelenting and daily xenophobic, sexist[] and vulgar remarks about her African heritage, comments about her hair, appearance and professional competence and

unwelcomed physical touching." *Id.*  According to Plaintiff, Adams's conduct "made her work environment unbearable and created a toxic and hostile work environment." *Id.* ¶ 18.

In July 2017, Plaintiff lodged an internal complaint with "Defendant's Department of Public Safety alleging sexual harassment against [] Adams." *Id.* ¶ 19.  That complaint was subsequently transferred to the Office of Human Resources. *Id.*  The following month, Plaintiff lodged an additional complaint against Adams with "Defendant's Office of Compliance and Diversity." *Id.* ¶ 20.  "Within nine months of her stint in Africana Studies and as a result of her complaint of discrimination, [Plaintiff] was transferred to the Political Science department and out of Adams's supervision." *Id.* ¶ 21.  Plaintiff maintains that "accepting the transfer" forced her "to suffer a demotion from her previous management position into the position of Director of Administrative Services," which constituted "a diminution of professional stature, duties and responsibilities," because the new position involved "performing nothing more than administrative duties that continue to thwart her professional development and advancement." *Id.*

Adams, meanwhile, was directed to have no contact with Plaintiff. *Id.*  On February 8, 2018, in spite of this no-contact order and the pendency of Plaintiff's August 2017 complaint, "Adams cornered [Plaintiff] alone in her office and silently placed a copy of the thesis paper he had assisted her with four years earlier on [her] desk." *Id.* ¶ 23.  Without providing any explanation for his behavior, "Adams simply entered her office, silently handed her the document and walked out." *Id.*  Plaintiff perceived this conduct "as a not so subtle taunt and reminder of [Adams's] prior mistreatment of her, including his acts of sexual abuse during the preparation of the paper that he was handing her." *Id.*

On or about October 22, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 8.  In December 2018, CUNY submitted

a "Position Statement to the EEOC" that represented that it was still investigating Plaintiff's claims and finalizing a report to the university president. *Id.* ¶ 27. "On or about July 29, 2019, the EEOC mailed a letter providing Plaintiff with the right to sue defendant." *Id.* ¶ 9. That letter indicated the EEOC's determination, based upon its investigation, that it was "unable to conclude that the information obtained establishes violations of the statutes." *See* Dkt. 65, Declaration of Mark Klein, Ex. A. On September 25, 2019, Gabriela Leal, the Interim Director of Compliance and Diversity at CUNY, advised Plaintiff in a letter "that it had completed its investigation into her complaints against [] Adams, and that John Jay College President Karol Mason had 'adopted' the investigator's findings substantiating some of the allegations [Plaintiff] had raised." Compl. ¶ 29; *see also id.* Ex. A.

## II.     Procedural History

Having exhausted her administrative remedies with the EEOC, Plaintiff commenced this action on October 27, 2019, asserting eight causes of action. Against CUNY, Plaintiff brings claims for gender discrimination, hostile work environment, and unlawful retaliation in violation of Title VII, and gender discrimination, hostile work environment, and retaliation in violation of Title IX. Plaintiff brings substantively similar claims against Adams pursuant to the New York State and New York City Human Rights laws. On March 13, 2020, CUNY filed a motion to dismiss all causes of action asserted against it. Dkt. 19. Plaintiff subsequently filed her first amended complaint without notifying the Court. Dkt. 27. On May 14, 2020, CUNY submitted a renewed motion to dismiss. Dkt. 32. Adams filed his first motion to dismiss on June 15, 2020. Dkt. 37.

On June 30, 2020, along with her opposition to CUNY's motion to dismiss, Plaintiff filed the Complaint without Defendants' consent and without seeking prior leave of the Court, as

4

required by Federal Rule of Civil Procedure 15(a)(2).  Dkt. 43.  On July 1, 2020, the Court ordered Plaintiff to seek leave to file the Complaint, which the Court granted on November 23, 2020.  Dkt. 61.  Both Adams and CUNY timely filed the instant motions to dismiss.  *See* Dkt. 62, 64.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In making that determination, the Court must accept as true all well-pled factual allegations and draw from them all reasonable inferences.  *See, e.g., Dane v. UnitedHealthcare Ins. Co.,* 974 F.3d 183, 188 (2d Cir. 2020).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 189 (internal quotation marks omitted).  The Court may also consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any integral document on which the plaintiff relied in drafting the complaint.  *See Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230-31 (2d Cir. 2016).

## DISCUSSION

**I.    Claims Under Title VII**

CUNY argues that all of Plaintiff's Title VII claims are time barred insofar as they rely on conduct that occurred prior to December 26, 2017 and that the Complaint does not include sufficient allegations of timely conduct to state a claim under the statute.  Plaintiff insists that she alleges "continuing violations," thus permitting the Court to consider conduct that took place before the limitations period.  The Court finds that Plaintiff's claim for hostile work environment

5

constitutes a continuing violation but that the remaining Title VII claims must be dismissed as untimely.

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. NYCHA*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5). In New York state, a "claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct," and failure to do so renders any such claim time barred. *Id.* This statute of limitations applies equally to "both discrete discriminatory acts and hostile work environment claims." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id*. at 112. This is true even when those acts "are related to acts alleged in timely filed charges" as "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113.

Applying this standard, Plaintiff's claims for gender discrimination and unlawful retaliation—her first and third causes of action—are timely only with respect to allegations of conduct committed after December 26, 2017, *i.e.*, 300 days before Plaintiff lodged her complaint with the EEOC. Because the crux of both claims is the discrete act of an adverse employment action, *see, e.g., Menaker v. Hofstra Univ.,* 935 F.3d 20, 30 (2d Cir. 2019) (discrimination); *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (retaliation), the continuing-violation doctrine does not apply. That doctrine covers claims "composed of a series of separate acts that collectively constitute one unlawful . . . practice," not those alleging discrete unlawful acts—even where those discrete acts are part of "serial violations." *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (internal quotation marks omitted). Here, Plaintiff does not allege that any

discrete discriminatory or retaliatory act occurred during the limitations period. Indeed, the only conduct alleged in the Complaint that falls within the statute of limitations is Adams's violation of the no-contact order against Plaintiff. *See* Compl. ¶ 23. Because that act did not involve, or precipitate, any adverse consequences to Plaintiff's employment, it cannot form the basis for a discrete claim of unlawful retaliation or discrimination under Title VII. The only conduct potentially cognizable as an adverse employment action, Plaintiff's alleged "demotion" to an administrative position within the Political Science department, *id.* ¶ 21, is time barred. Plaintiff's first and third cause of action against CUNY are therefore dismissed for failure to state a claim.

"A hostile work environment claim," by contrast, is by its very nature "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). In such a case, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," "[p]rovided that an act contributing to the claim occurs within the filing period." *Id*. "Accordingly, if 'any act falls within the statutory time period,'" a court needs "'to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 12). Mindful of the "fact-specific" and "amorphous" nature of hostile work environment claims, the Second Circuit Court of Appeals has instructed courts to make an "individualized assessment of whether incidents and episodes are related." *Id.* at 77.

As in initial matter, the Court has little doubt—and CUNY does not dispute—that the allegations of Adams's harassment of Plaintiff, namely the continuous unwanted sexual conduct from 2006 to 2014, Compl. ¶¶ 14-15, as well as the unwelcomed physical touching and discriminatory remarks Plaintiff suffered on a daily basis under Adams's supervision between

January and September 2017, *id.* ¶ 17, suffice to state a claim for a hostile work environment. In the Title VII context, a workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rasmy,* 952 F.3d at 387 (internal quotation marks omitted). Persistent sexual harassment and discriminatory remarks plainly meet this standard.

CUNY nonetheless claims that the only allegation that falls within the statutory period is Adams's February 2018 delivery of Plaintiff's thesis paper, and that this "conduct on a *single day* is simply insufficient to plausibly allege" a hostile work environment. CUNY Mot. at 10. That may be true. Because a hostile work environment is a continuing violation, however, the viability of Plaintiff's claim does not hinge on whether or not "the within-limitations period incident satisfied the severe or pervasive standard of a hostile work environment claim." *McGullam,* 609 F.3d at 77.

Instead, the question before the Court is whether the allegation of Adams's conduct in February 2018 is "sufficiently related," *id.*, to his prior alleged harassment of Plaintiff so as to constitute the same unlawful employment practice. On this score, Plaintiff maintains that Adams's unexplained delivery of a four-year-old paper, in spite of the no-contact order issued in response to her allegations of sexual harassment, constituted a "reminder of her prior mistreatment of her, including his acts of sexual abuse during the preparation of the paper." Dikambi CUNY Opp. at 9. Although a factfinder might ultimately reach a different conclusion about Adams's conduct, the Court agrees, drawing all reasonable inferences in Plaintiff's favor, that this act may constitute part of the broader hostile work environment challenged in the Complaint. One could reasonably

infer from the above-cited allegations that Adams delivered that paper for the purpose of taunting or intimidating Plaintiff.

Moreover, the fact that university officials transferred Plaintiff out of her position in the Africana Studies department "and out of Adams's supervision" "as a result of her complaint of discrimination," Compl. ¶ 21, does not render implausible the connection between the February 2018 incident and the earlier work environment. *Cf. McGullam*, 609 F.3d at 78 (recognizing that an intervening action by an employer such as a departmental transfer may support a finding that a subsequent act was not part of the same environment). Several factors support the Court's conclusion. First, the harasser was the same. In spite of the transfer, Plaintiff was subject to contact from the same man allegedly responsible for the initial hostile work environment. Second, the involvement of the thesis paper with which Adams was assisting Plaintiff when he allegedly sexually assaulted her in 2014 provides a further link with the earlier harassment. The lapse in time between the two events is not itself dispositive. *See id.* at 76; *Morgan*, 536 U.S. at 118. Accordingly, the Court finds that Plaintiff has plausibly alleged that Adams's conduct on February 2018 was a continuation of the conduct that created a hostile work environment. Her claim is therefore timely.

CUNY furthers no other arguments for dismissing this second cause of action. The motion to dismiss Plaintiff's Title VII claim for hostile work environment is therefore denied.

## II. Claims Under Title IX

Plaintiff's fourth, fifth, and six causes of action—for sex discrimination, unlawful retaliation and hostile work environment under Title IX—are substantively similar to the claims brought under Title VII. *See* Compl. ¶¶ 40-49. Both statutes "are governed by the same substantive standards for reviewing claims of both harassment and retaliation." *Summa v. Hofstra*

*Univ.*, 708 F.3d 115, 131 (2d Cir. 2013). Title IX differs from Title VII, however, in several respects that are relevant to the instant motions. An individual bringing a claim under Title IX need not comply with the administrative-exhaustion requirements imposed on Title VII plaintiffs. *See, e.g., id.* Title IX claims are also subject to a lengthier, three-year statute of limitations. *See Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019). Accordingly, Plaintiff's Title IX claims implicate conduct that dates back to October 2016.

CUNY argues that none of Plaintiff's claims are cognizable under Title IX because she alleges discrimination in employment, not education. According to CUNY, Title VII provides the exclusive remedy for the types of claims that Plaintiff brings here. Plaintiff insists that Title IX provides a private right of action for employment discrimination, and that her status as an employee of a federally funded educational institution allows her to seek relief under both statutes. As the parties acknowledge, neither the Supreme Court nor the Second Circuit has ruled on that question.

Pursuant to Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any *education program or activity* receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). Unlike Title VII, the statute does not expressly create a private right of action. Instead, courts have implied an "intent on [Congress's] part to have such a remedy available to the persons benefited by its legislation." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979).

The Courts of Appeals are split as to whether this implied remedy extends to employees that have suffered employment discrimination in educational settings. *Compare Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995) ("We are not persuaded that Congress intended that Title IX offer a bypass of the remedial process of Title VII. We hold that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded

educational institutions.") *with Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 562 (3d Cir. 2017) (holding that "the provision implying Title IX's private cause of action, 20 U.S.C. § 1681(a), encompasses employees, not just students"). In this Circuit, however, "an 'overwhelming majority of district courts . . . have found that an implied private right of action *does not* exist[ ] under Title IX for employees alleging gender discrimination in the terms and conditions of their employment.'" *Xanthakos v. City Univ. of New York,* No. 17-CV-9829, 2020 WL 5026930, at *9 (S.D.N.Y. Aug. 24, 2020) (quoting *Gayle v. Children's Aid Coll. Prep Charter Sch.*, No. 18-CV-9874, 2019 WL 3759097, at *5 (S.D.N.Y. July 29, 2019)).

The Court agrees with the balance of persuasive authority within the Second Circuit that Title VII provides the exclusive remedy for claims of employment discrimination like the ones brought here. To hold otherwise would "disrupt the balanced remedial scheme of Title VII," which requires plaintiffs to exhaust their administrative remedies with the EEOC before bringing suit in federal court. *Xanthakos*, 2020 WL 5026930, at *9. Substantively speaking, Plaintiff's causes of action are quintessential claims for employment discrimination. She alleges a hostile work environment, retaliation in the form of a demotion in position, and gender discrimination in the work place. Permitting employees like her to evade the requirements outlined by Congress simply because their employment involves "an education program or activity" would effectively carve out a special exception for that category of employees. There is no indication in the text of Title IX, which was passed a mere eight years after Title VII, that Congress intended any such exception. "If Congress had intended to depart from the structure it established in Title VII and allow a private plaintiff to circumvent that remedial scheme simply by framing his complaint in terms of Title IX, it would have done so explicitly." *Vega v. State Univ. of New York Bd. of Trustees*, No. 97 CIV. 5767 (DLC), 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000). Accordingly, the Court agrees

with CUNY that it would be "illogical" to read Title IX as providing a distinct avenue of relief for a particular group of plaintiffs whose claims are substantively available under Title VII, when Congress did not expressly create such an avenue. CUNY Mot. at 20.

Because the Court is not persuaded that Plaintiff, as an employee of a public funded university, is a member of the "special class" for whose benefit Title IX was created, *Cannon*, 441 U.S. at 689, it declines—absent controlling precedent—to read the statute as implying such a right of action. In short, Plaintiff's status as an employee of a federally funded educational institution does not permit her to bring a claim for employment discrimination under Title IX. Accordingly, her fourth, fifth, and sixth causes of action are dismissed.

### III. Claims Against Adams

Plaintiff's seventh and eighth causes of action assert that Adams "engaged in a pattern and practice of gender discrimination by subjecting [her] to a gender-based abusive and hostile environment, sexual harassment and unlawful retaliation," that violated the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") respectively. Compl. ¶¶ 51, 57. These claims are substantively similar to, and underpinned by the same factual allegations as, those brought under Title VII. Adams argues that the state and city claims should be dismissed as time-barred and for failure to state a claim. The Court addresses each statute in turn.

The NYSHRL, in relevant part, bars "an employer" from discriminating against an individual "in terms, conditions, or privileges of employment" because of that individual's race, national origin, sex, and other protected characteristics. N.Y. Exec. Law § 296(1)(a). An individual may be liable for discriminatory practices under the NYSHRL only if that individual qualifies as an "employer," a category that encompasses those with ownership interests or the

12

authority to make personnel decisions. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (citing *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542 (N.Y. 1984)). The NYSHRL also makes individuals liable for "aid[ing], abet[ting], inci[ing], compel[lling] or coerc[ing] the doing of any of the acts forbidden under this article, or [] attempt[ing] to do so." *Id.* § 296(6). In the absence of a ruling from the New York Court of Appeals, the Second Circuit has interpreted § 296(6) to permit liability of an individual defendant who "actively participates in the conduct giving rise to the discrimination." *Tomka*, 66 F.3d at 1317.

Citing *Tomka*, Plaintiff maintains that Adams's "active participation" in the alleged harassment makes him liable under the NYSHRL. Dikambi Adams Opp. at 17-18. The Court disagrees. As an initial matter, the Complaint contains no allegation to support the contention, implied in Plaintiff's opposition, that Adams's supervisory role qualifies him as "an employer" within the meaning of the NYSHRL. With respect to Adams's position with the university, Plaintiff alleges only that he was a "professor," a "well-known researcher, speaker, and education media figure," and, at one time, chair of the Africana Studies Department. Compl. ¶¶ 7, 13, 17. None of these allegations permit the Court to reasonably infer that he had the authority to make personnel decisions, let alone that he enjoyed any ownership interest in New York City's public university system.

Nor can Adams be held liable under the aiding-and-abetting provision of the NYSHRL under these circumstances. He is the only individual alleged to have committed any actionable discrimination. The Court doubts that Adams can logically aid, abet, incite, compel, or coerce a discriminatory practice of his employer that is premised entirely upon his own misconduct. Although the *Tomka* court ruled that individual employees may be held liable in cases where their own conduct created the hostile work environment that they aided and abetted, that court did so in

13

a case in which multiple individual defendants were alleged to have committed related discriminatory acts against the plaintiff. *See* 66 F.3d at 1300, 1317. "Accordingly, it is reasonable to surmise that 'the rationale behind the [Second Circuit's] decision was that each of the three individual defendants were aiding and abetting their fellow defendants' violations.'" *Malanga v. NYU Langone Med. Ctr.*, No. 14-CV-9681, 2015 WL 7019819, at *5 n.3 (S.D.N.Y. Nov. 12, 2015) (quoting *Perks v. Town of Huntington*, 96 F. Supp. 2d 222, 228 (E.D.N.Y. 2000)). Here, where Adams committed all of the alleged discriminatory acts himself, and no one else is alleged to have contributed to that discrimination, the Court would have to strain the statutory language of the human rights law to conclude that Adams "aid[ed], abet[ted], incite[d], compel[led] or coerce[d] the doing of" any discriminatory act, N.Y. Exec. Law § 296(6).

Indeed, a number of judges within this District and New York appellate courts have held that § 296(6) does not apply in a situation like this, where the defendant acted alone in committing some form of employment discrimination. *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) ("Under the NYSHRL, '[a]n individual may not be held liable ... merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating' that law." (quoting *Virola v. XO Commc'ns, Inc.*, No. 05 Civ. 5056(JG)(RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008))); *Strauss v. New York State Dep't of Educ.*, 805 N.Y.S.2d 704, 709 (N.Y. App. Div. 2005) ("individuals cannot be held liable under Executive Law § 296(6) for aiding and abetting their own violations of the Human Rights Law"). The Court finds those decisions to be persuasive interpretations of the statutory scheme, and finds that Adams cannot, as a matter of law, aid or abet discriminatory practices that were entirely of his own creation.

The NYCHRL, by contrast, expressly provides for direct individual liability of an employee "regardless of [that employee's] ownership or decisionmaking power." *Malena,* 886 F. Supp. 2d at 366. That statute makes it unlawful for "an employer or *an employee or agent thereof*, because of the actual or perceived . . . race, creed, color, national origin, gender . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.'" N.Y.C. Admin. Code § 8–107(1)(a)(3) (emphasis added). As a CUNY employee who actually participated in the alleged harassment, Adams may be directly liable under the NYCHRL for unlawful discrimination. Because the statute of limitations for claims under municipal law is three years, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing N.Y.C. Admin. Code § 8–502(d)), the Court may consider allegations dating back to October 2016 in its assessment of the NYCHRL claims against Adams.

As discussed above, Plaintiff has plausibly alleged a hostile work environment against CUNY under Title VII. It is well-established that "[t]he standard for maintaining a hostile work environment claim is lower under the NYCHRL." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). To state a claim under municipal law, a Plaintiff need only allege that she "was treated less well than other employees" because of a protected characteristic. *Bilitch v. New York City Health & Hosps. Corp.,* 148 N.Y.S.3d 238, 245 (N.Y. App. Div. 2021) (internal quotation marks omitted). Plaintiff's allegations that Adams repeatedly subjected her to unwanted sexual touching and derogatory comments of a racialized nature plainly state a claim under that standard. Adams, as the principal cause of that abusive environment and a CUNY employee, is directly liable under the NYCHRL for that violation.

With respect to claims for discrimination and retaliation, "the NYCHRL prohibits employers from 'retaliat[ing] or discriminat[ing] in any manner against any person because such

15

person has ... opposed any practice forbidden' [by the law]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8–107(7)). As noted above, to establish a *prima facie* case for discrimination under a theory of retaliation or discrimination, Plaintiff must plausibly allege that she suffered an adverse action. In contrast to federal or state law, however, "the retaliation or discrimination complained of" under the NYCHRL "need not result in a materially adverse change in the terms and conditions of employment, ... provided … that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." *Id.* (internal quotation marks omitted). Here, the only timely allegation that could theoretically qualify as an adverse action is Plaintiff's transfer "out of Adams's supervision" to the Political Science department. *See* Compl. ¶ 21. Yet even if the Court were to accept that that transfer—which Plaintiff apparently accepted—meets the standard for an adverse action, Plaintiff's claims would still fail under municipal law because she makes no allegation that Adams had any involvement in the decision to transfer her. As a result, the Court cannot find him directly liable under the NYCHRL for a discriminatory or retaliatory act premised upon that transfer.

## CONCLUSION

For the foregoing reasons, CUNY's motion to dismiss is DENIED with respect to Plaintiff's second cause of action insofar as it alleges a hostile work environment and GRANTED in all other respects. Adams's motion to dismiss Plaintiff's claims is DENIED with respect to the seventh cause of action insofar as it alleges a hostile work environment, and GRANTED in all other respects. In sum, Plaintiff may proceed with her claims for a hostile work environment against CUNY under Title VII and against Adams under the NYCHRL. The Clerk of Court is respectfully directed to terminate the items at docket numbers 62, 63, and 64.

By no later than September 28, 2021, the parties shall jointly submit to the Court a proposed case management plan and scheduling order. A template for the order is available at https://nysd.uscourts.gov/hon-ronnie-abrams. Counsel for both parties shall appear for a status conference on October 5, 2021 at 12:00 p.m. The Court will hold this conference by telephone. The parties shall use the dial-in information provided below to call into the conference: Call-in Number: (888) 363-4749; Access Code: 1015508. This conference line is open to the public.

SO ORDERED.

Dated:   September 14, 2021
         New York, New York

Ronnie Abrams
United States District Judge