USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/24/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUDITH SANDRINE DIKAMBI,

                Plaintiff,

          v.

CITY UNIVERSITY OF NEW YORK, DR. CARLTON J. ADAMS,

                Defendants.

No. 19-CV-9937 (RA)

MEMORANDUM
OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

    Before the Court is Defendant City University of New York's ("CUNY") motion for reconsideration of the Court's September 14, 2021 Order, in which the Court granted in part and denied in part CUNY's motion to dismiss the Second Amended Complaint. For the reasons that follow, the motion is denied.

## BACKGROUND

    Plaintiff Judith Sandrine Dikambi brought this case against her former supervisor Dr. Carlton Adams and against her employer CUNY. She alleged gender discrimination, sexual harassment, and retaliation in violation of Title VII, Title IX, and state law. The Court assumes the parties' familiarity with the facts alleged in Plaintiff's Second Amended Complaint and does not recount them in full here.

    On September 14, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint. Dkt. 79. As relevant here, the Court found that Plaintiff had stated a timely Title VII claim against CUNY under a vicarious liability theory based on Adams' alleged harassment of Plaintiff. Specifically, the Court concluded that the one alleged

incident of harassment that occurred within the statutory limitations period contributed to the alleged hostile work environment that had started before the limitations period. Accordingly, the Court ruled that Plaintiff's Title VII claim was timely under the continuing violation doctrine and that conduct that occurred before the limitations period could be considered in determining CUNY's ultimate liability. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). During that one timely incident—which occurred on February 8, 2018, and in which Adams entered Plaintiff's office and silently handed her a copy of a thesis he had previously assisted her with—Adams was no longer Plaintiff's direct supervisor.

On September 28, 2021, CUNY moved for reconsideration. Dkt. 82. In its motion, CUNY emphasized that it was not challenging the Court's ruling that "the single within-limitations action on February 8, 2018 was . . . sufficiently related to earlier acts to constitute a continuation of earlier unlawful conduct." Dkt. 83 at 1. Rather, CUNY argued that the Court had overlooked an independent argument for dismissing the Title VII claim against CUNY: that because Adams was a co-worker rather than a supervisor during the February 2018 incident, CUNY could be liable only if it had provided no reasonable avenues for complaint or had known of Adams' harassment and did nothing about it. According to CUNY, Plaintiff had failed to plead such facts, making her Title VII claim fail as a matter of law. Plaintiff opposed CUNY's motion, Dkt. 88, and CUNY replied, Dkt. 89. CUNY attached to its reply a copy of a no-contact order against Adams that was dated February 23, 2018, and argued that this document undermined Plaintiff's allegation that a no-contact order was in place on February 8 of that year. Dkt. 90 Ex. A.

On October 29, 2021, the Court heard argument on CUNY's reconsideration motion. Following that proceeding, the Court issued an order directing the parties to submit supplemental briefs addressing two issues:

1. The plausibility of Plaintiff's allegation that a no-contact order was in place against Adams on February 8, 2021 given the document CUNY submitted in its reconsideration motion, and whether the Court could consider that document in the first instance on a motion to dismiss.

2. Whether—in a hostile work environment claim that is timely under the continuing-violation doctrine—the alleged harasser should be treated as a coworker or as a supervisor for vicarious liability purposes when the alleged harasser was a supervisor during the incidents that themselves fell outside the limitations period but was a coworker during the incident that fell within the limitations period.

Dkt. 92.  The parties submitted supplemental briefs on November 5, 2021.  Dkts. 94, 96. Plaintiff's brief attaches a letter from CUNY administration to Plaintiff dated October 31, 2017, which she argues constituted a no-contact order against Adams.  In that letter, CUNY administration wrote: "Adams was advised there should be no retaliation on his part, for [Plaintiff's] filing of this complaint.  He indicated his understanding and acknowledged that as his term as departmental chairperson came to a close there would be little if any need for future interaction with [Plaintiff]."  Dkt. 95 Ex. A at 2.  On November 12, 2021, Plaintiff amended her Complaint for the third time.  In the Third Amended Complaint, she maintains that based on the October 31 letter, she "understood that Defendant Adams was to have 'no contact' with her."  Dkt. 97 ¶ 38.

**LEGAL STANDARD**

A party seeking reconsideration typically must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).[1] The standard is strict, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A reconsideration motion "may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Murray v. Dutcavich*, No. 17-cv-9121 (PMH), 2020 WL 3318212, at *1 (S.D.N.Y. June 18, 2020).

## DISCUSSION

As an initial matter, the Court observes that CUNY's opening brief in support of its motion to dismiss raised neither of the arguments it currently advances in support of reconsideration. It was only in CUNY's reply brief that it addressed the significance of Adams' status during the February 2018 incident. *See* Dkt. 78 at 6-7.[2] And CUNY did not challenge Plaintiff's allegation that there was a no-contact order in place during that incident until its reconsideration briefing. Courts need not consider arguments (or facts in support of those arguments) that are raised for the first time in a reply brief. *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), *aff'd*, 374 Fed. App'x 71 (2d Cir. 2010); *accord Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998) (collecting cases). "However, the Second Circuit has made it abundantly clear that a district court has *discretion* to consider a belatedly-raised argument." *OneBeacon*, 611 F. Supp. 2d at 375 (citing

---

[2] In its reconsideration motion, CUNY suggests that it raised this argument in its opening brief by arguing that Plaintiff had not pleaded facts supporting vicarious liability on her *Title IX* hostile work environment claim because she did not allege that "a CUNY official with authority to address the alleged discrimination and institute corrective measures failed adequately to respond to her complaint." Dkt. 66 at 23-24. But despite the general similarity between Title VII and Title IX standards, that specific requirement is unique to Title IX; CUNY cannot now characterize this argument as implicitly or explicitly applying to its Title VII defense as well. The closest analogy in Title VII law is the *Faragher/Ellerth* affirmative defense, which shields an employer from liability if "the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior" and if the "plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 137 (E.D.N.Y. 2019). But CUNY failed to raise this Title VII defense in its Answer or its motion to dismiss.

*Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)). In the interest of a full and prompt resolution of the issues CUNY raises—and because Plaintiff had an opportunity to respond to these belated arguments in its supplemental brief—the Court exercises its discretion to consider CUNY's arguments on their merits.

I.  **Whether Adams Should Be Considered a Supervisor or a Coworker for Purposes of Determining CUNY's Liability**

The primary issue raised in CUNY's reconsideration motion is whether Adams should be treated as a coworker or as a supervisor in determining CUNY's liability. Absent its raising a specific affirmative defense, an employer is vicariously liable under Title VII for a supervisor's creation of a hostile work environment, even without a showing of the employer's negligence or other wrongdoing. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). But an employer is vicariously liable for a coworker's harassment only if it "provided no reasonable avenues for complaint or knew of the [coworker's] harassment but did nothing about it." *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998). Because CUNY has not raised the affirmative defense established in *Ellerth*, there is little question that Plaintiff has stated a claim against CUNY if Adams is treated as a supervisor.

As stated earlier, Adams was Plaintiff's direct supervisor during several incidents that occurred prior to the limitations period—but during the one incident that fell within that period, he was merely her coworker. CUNY urges that Adams' status during that one timely incident should control, and that under the stricter standard governing an employer's vicarious liability for a coworker's harassment, Plaintiff has not adequately alleged facts supporting CUNY's liability.

To the Court's knowledge, this question has not been directly addressed by the Second Circuit or any district courts within the Circuit. But the Court does not interpret the continuing violation doctrine to suggest, much less demand, the outcome CUNY advocates. In *Morgan*, the

5

Supreme Court made clear that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible *for the purposes of assessing liability*, so long as an act contributing to that hostile environment takes place within the statutory time period." 536 U.S. at 105 (emphasis added). If earlier incidents can be considered for the general "purposes of assessing liability," then it follows that they can inform the threshold inquiry in assessing such liability—which version of the vicarious liability standard controls. Indeed, it would be an extraordinarily strained reading of *Morgan* to conclude that determining an alleged harasser's status is not part of "assessing liability." Contrary to CUNY's interpretation, a timely contributing act is not an "anchoring event" in the sense that it limits a court's substantive analysis of a Title VII claim, *see* Dkt. 96 at 5; rather, it anchors the claim within the statutory time period, thus allowing a court to consider all events that contribute to that claim. Consistent with this reading, district courts outside this Circuit have assessed an employer's vicarious liability under the standard for a supervisor's harassment, not under the standard for a coworker's harassment, when the timely incident contributing to a hostile work environment claim occurred when the alleged harasser was no longer the plaintiff's supervisor. *See, e.g.*, *Rogers v. England*, 362 F. Supp. 2d 269, 271-72 (D.D.C. 2005) (citing *Morgan*, 536 U.S. at 117) (finding that a former supervisor's phone call to a plaintiff was sufficiently related to his earlier harassment to render the plaintiff's claim timely and proceeding to consider whether the employer was entitled to the *Faragher/Ellerth* defense); *Hernandez-Payero v. Puerto Rico*, 493 F. Supp. 2d 215, 220, 222-24, 227-28 (D.P.R. 2007) (determining that a triable issue of fact existed as to whether a former supervisor's conduct when he was no longer the plaintiff's supervisor was sufficiently related to previous conduct to constitute a continuing violation, then assessing the employer's liability under the *Faragher/Ellerth* standard).

The cases cited by CUNY in its supplemental brief are inapposite. It is true that these cases discuss the fact that a harasser was no longer a supervisor during a particular incident—but they treat that fact as relevant to whether an incident was related enough to earlier events to constitute a continuing violation, not as relevant to whether a harasser should be treated as a coworker or as a supervisor. *See, e.g.*, *Holmes v. Utah Dep't of Workforce Servs.*, 483 F.3d 1057, 1068 (10th Cir. 2007); *Lucas v. Chicago Trans. Auth.*, 367 F.3d 714, 727 (7th Cir. 2004); *Torrel v. City of New York*, No. 01-cv-9895 (DLC), 2003 WL 22335006, at *3 (S.D.N.Y. Oct. 14, 2003); *see also Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 328-29 (5th Cir. 2009) (concluding that intervening changes in a plaintiff's work environment, including a temporary transfer away from a harassing supervisor's crew, defeated the plaintiff's continuing violation argument). In short, these cases concern the threshold question of whether the continuing violation doctrine applies, not the subsequent question of whether liability analysis is limited in scope after a court has determined that the doctrine does indeed apply. And CUNY has explicitly stated that is it not challenging the Court's ruling that the February 2018 incident was sufficiently related to earlier incidents to constitute a continuing violation. Accordingly, the Court is not persuaded that "manifest injustice" would result in treating Adams as a supervisor for purposes of determining CUNY's vicarious liability. *Virgin Atl. Airways*, 956 F.2d at 1255.

## II. Whether Plaintiff Has Plausibly Alleged that a No-Contact Order Was in Place on February 8, 2018

In the Second Amended Complaint, Plaintiff alleged that there was a no-contact order in place against Adams as of the February 8, 2018 incident; the Court assumed this fact to be true in its September 14 Order. But in its reconsideration briefing, CUNY submitted a no-contact order against Adams dated February 23, 2018, casting into doubt whether such an order had been in effect before that date. Dkt. 90 Ex. A at 4. In her supplemental brief, Plaintiff countered with the

document that she claims to constitute the earlier no-contact order: a letter from CUNY administration dated October 31, 2017, which states that "Adams . . . acknowledged that as his term as departmental chairperson came to a close there would be little if any need for future interaction with [Plaintiff]." Dkt. 95 Ex. A at 2.

As a threshold matter, the Court concludes that it may consider the document filed with Plaintiff's supplemental brief, even at this procedural stage. Plaintiff clearly incorporated the October 31 document by reference in her Second Amended Complaint when she discussed the "no contact order." *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint."); Dkt. 43 ¶¶ 21, 23. She continues to do so in her Third Amended Complaint. Dkt. 97 ¶ 38.

Having considered the October 31 letter, the Court finds that it directly contradicts Plaintiff's assertion that there was a no-contact order in place after its issuance. While a no-contact order forbids *all* contact with an individual, the letter explicitly contemplates the possibility of a "little" need for interaction between Adams and Plaintiff. Indeed, the letter does not purport to restrict Adams' behavior in any way; it merely predicts what contact, or lack thereof, might occur in the future between him and Plaintiff. In short, even drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude that this letter represents a no-contact order or otherwise states that Adams was directed to have no contact with Plaintiff—or that any reasonable reader would interpret it as such. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The Court . . . is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.").

But this finding does not require the Court to reconsider any aspect of its prior Order, either as to Plaintiff's Title VII claim against CUNY or as to Plaintiff's NYCHRL claim against Adams. Whether or not there was a no-contact order in place on February 8, 2018 was not dispositive to the Court's conclusion that Adams' conduct that day was sufficiently related to his earlier harassment to constitute a continuing violation. That is, even without this fact, one could reasonably infer that Adams came to Plaintiff's office and gave her a copy of her thesis paper "for the purpose of taunting or intimidating" her. Dkt. 79 at 8-9. Nor was Court's conclusion that Plaintiff stated a claim against Adams under the NYCHRL dependent on the existence of a no-contact order. *See id.* at 15 ("Plaintiff's allegations that Adams repeatedly subjected her to unwanted sexual touching and derogatory comments of a racialized nature plainly state a claim . . . Adams, as the principal cause of that abusive environment and a CUNY employee, is directly liable under the NYCHRL for that violation.").

## CONCLUSION

For the foregoing reasons, CUNY's motion for reconsideration is denied.

As noted above, Plaintiff filed a Third Amended Complaint on November 12, 2021, which was permitted by the operative case management plan and scheduling order. *See* Dkt. 93. CUNY has requested that the Court reject this amended pleading or, in the alternative, extend CUNY's time to file a renewed motion to dismiss. Dkt. 99. The Court declines to reject the Third Amended Complaint; however, Plaintiff may not further amend without leave of Court. CUNY may renew its substantive objections to the Third Amended Complaint in its motion to dismiss, which shall be filed by December 15, 2021.

Finally, CUNY's request to stay discovery pending resolution of its motion to dismiss the Third Amended Complaint is premature, given that CUNY has not yet filed that motion. *See*

*Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (listing the strength of the pending dispositive motion as one of the factors to be considered in deciding a motion to stay). CUNY may renew this request in or together with its motion to dismiss.

The Clerk of Court is respectfully directed to terminate the motions at docket numbers 82 and 99.

SO ORDERED.

Dated:   November 24, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge